IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 23-cr-0327-JRR |
| JALEN THOMAS KELLEY | |

**MEMORANDUM OPINION**

In every case where the government seeks for a person to be detained while awaiting trial—to detain a person who, by definition, is presumed innocent of the charges—the government bears the burden of demonstrating that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f). And where the government seeks to make such a showing based on a claim of danger to the community, it must prove any facts in support of such a requested finding "by clear and convincing evidence." *Id.* § 3142(f)(2). The government bears that burden regardless of whether the charges or circumstances give rise to what is sometimes referred to as a presumption of detention; in *all* cases the burden of persuasion that *no* condition or combination of conditions will reasonably assure appearance and community safety remains with the government.

Pretrial release is not, as government counsel suggested at the detention hearing in this case, a "privilege." As the Supreme Court has made clear, "[i]n our society liberty is the norm, and detention prior to trial . . . is"—or at least as directed by the Supreme Court and Congress is supposed to be—"the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). And the Bail Reform Act requires that a court impose the "*least* restrictive further condition, or combination of conditions" that "will reasonably assure the appearance of the

1

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

At this time, as explained below, the Court does not decide whether the government has demonstrated that no set of release conditions would reasonably assure community safety. The government has, however, satisfied its burden based on the pendency of charges and an accompanying arrest warrant in North Carolina, and its showing that Mr. Kelley is likely to be detained in North Carolina on the arrest warrant issued from that jurisdiction. Such detention in North Carolina would not only render even an order of pretrial home confinement by this Court meaningless, but could give rise to a risk of nonappearance in this case. Accordingly, the government's motion is granted. If those circumstances change, however, Mr. Kelley may request to reopen the hearing on the government's motion for detention, at which time, if the government seeks continued pretrial detention, the Court would consider whether the government can make the requisite showing.

**BACKGROUND**

At least until the time of his arrest in this case, Jalen Thomas Kelley was in his junior year of college at Wingate University in North Carolina. He grew up in Maryland, and attended school in Harford County, Maryland. Mr. Kelley was arrested on September 20, 2023, on charges of violations of 18 U.S.C. §§ 2241, 2242, and 113 in connection with an alleged sexual assault following a New Years Eve party on a cruise, in the early hours of January 1, 2023. The government contends that the encounter at issue constituted a forcible rape. Mr. Kelley denies the charges. Mr. Kelley appeared on November 16, 2023, for a detention hearing, after having initially consented to detention at his initial appearance on these charges, ECF No. 14.

The government moved, pursuant to 18 U.S.C. § 3142, for detention on the ground of danger to the community. ECF No. 16. In support, the government contends that, in addition to the current charged offense, Mr. Kelley committed other sexual offenses. Some of the allegations go back to when Mr. Kelley was far younger. None of the alleged incidents, other than the alleged sexual assault on the cruise, has been charged in this case. With two exceptions, none has been charged in *any* jurisdiction, although the government contends it has reason to believe that one or more other indictments may be forthcoming. One of those exceptions was an incident when, according to the government, Mr. Kelley had just turned 17, for which he was charged in Juvenile Court with fourth-degree sexual assault and second-degree assault, and was sentenced to 90 days supervised probation and sent to an alternative school. The other instance in which Mr. Kelley has been charged relates to an incident this past August, between Mr. Kelley and a college classmate, for which Mr. Kelley has been charged in Union County, North Carolina, with Second Degree Forcible Rape, in violation of N.C. Code 14-27.22. There is an arrest warrant outstanding based on those charges.

At the detention hearing, the government amended its motion for detention to include risk-of-nonappearance grounds. The government contends, first, that in light of the outstanding arrest warrant based on the North Carolina case, if Mr. Kelley were released to turn himself in on that warrant, he would likely be detained in North Carolina—either by order of the North Carolina court, or through imposition of an unaffordable money bond—and would then become unavailable to face the federal charges in this Court. The government further contends that Mr. Kelley poses a risk of flight because he has learned of these charges and the potential for additional charges in other jurisdictions.

Against this backdrop, Mr. Kelley does not (at least at this time) seek release to the community, or to return to in-person college classes or dormitory life, or the like. He requests to (1) be released to the North Carolina detainer, to request that the North Carolina court permit release subject to imposition of a monetary bond, and then (2) in the event the North Carolina court permits release, or imposes bond that Mr. Kelley or his family is able to pay, to be subject to home confinement and electronic location monitoring under the custody and supervision of his mother, and to receive intensive mental health treatment, in addition to other stringent conditions, described below, while awaiting trial on the charges in this case.

## DISCUSSION

The Bail Reform Act (the "Act") governs the release or detention of a defendant pending trial in federal court. 18 U.S.C. § 3142. Prior to enactment of the Act in 1984, there was only a single basis on which pretrial detention was authorized: risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 536 n. 18 (1979) (quoting relevant portion of the Bail Reform Act of 1966, then-18 U.S.C. § 3146(a): "Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required."). The enactment of the Bail Reform Act of 1984 was driven largely by a push to authorize pretrial detention where, even if a defendant did not present a risk of flight, the court believed there was sufficient risk that the defendant, if released, would pose a danger to the community that the person's liberty could be stripped even though the person was presumed innocent of the charged

4

offenses. *See, e.g.*, Hon. Donald P. Lay & Jill De La Hunt, *The Bail Reform Act of 1984: A Discussion*, 11 William Mitchell L. Rev. 929, 933, 936-37 (1985).

Entering what was then a brave new world of, essentially, preventive detention, *see id.* at 931, there was deep concern that permitting detention for dangerousness violated the Fifth Amendment's Due Process Clause, or the Eighth Amendment's prohibition on excessive bail. Those concerns came before the Supreme Court in the *Salerno* case. Congress, through the Act, had concluded that pretrial detention based on prospective dangerousness in certain circumstances was appropriate. And in *Salerno*, the Supreme Court rejected the petitioners' constitutional challenges—but only because Congress had imposed a robust suite of limitations and procedural protections. These limitations and protections were crucial to the Supreme Court's approval of the Act, particularly given that the government and courts are prohibited from employing pretrial detention for any purpose related to punishment, *Bell*, 441 U.S. at 536-37 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."), and the Act of course did not "modify[] or limit[] the presumption of innocence," 18 U.S.C. § 3142(j).

The Act was held facially valid because of its inclusion of various procedural safeguards, including three of particular relevance here. First, the Act imposes a strict standard, limiting pretrial detention to circumstances where there is "no condition or combination of conditions" short of detention that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In analyzing whether there is any set of conditions that would provide such reasonable assurance, courts must consider the nature and circumstances of the offense charged, the weight of the evidence, the person's

history and characteristics, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.* § 3142(g).

Second, the Act burdens the government to prove the absence of *any* arrangement, short of full-blown detention (*i.e.,* even the inadequacy of home detention or confinement with location monitoring and other conditions), that would "reasonably assure" the court that the person will appear as required and not endanger the safety of other people or the broader community while awaiting trial. *Id.* § 3142(e)(1). After all, the Act requires that courts impose the "*least* restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B).

The existence of what is sometimes called a "presumption of detention" neither lifts, nor alleviates, that burden of persuasion. Where, as here, the nature of the offense triggers such a "rebuttable presumption . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(e)(2),[1] the defense must come forward with at least some evidence that there *are* conditions that would "reasonably assure the appearance of the person as required and the safety of the community," *id.* § 3142(e)(3). *See, e.g.*, *United States v. Davis*, 449 F. Supp. 3d 532, 534 (D. Md. 2020) ("The presumption of detention places a limited burden of production—not a burden of persuasion[—] on the defendant to come forward with evidence that he does not pose a danger to the community or a risk of flight.") (cleaned up, citations omitted). Often that evidence takes the form of a proposed plan for conditions of release to assure the court that the defendant will appear, and not

---

[1] Because the grand jury returned an indictment under 18 U.S.C. §§ 2241(a) and 2242(3), and because according to the government the alleged victim was 17 years old at the time and thus a minor, a rebuttable presumption arises under § 3142(e)(3).

pose a danger to the community, while awaiting trial. Regardless of whether the defense comes forward with such evidence, and although the presumption even if rebutted "remains a factor to be considered" in assessing the adequacy of proposed conditions of release, *see, e.g.*, *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011), at all times the burden remains on the government to prove the absence of any arrangement short of detention that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(e)(1), (g).[2]

Third, Congress concluded that the government, when seeking detention for prospective dangerousness, must prove any facts that it contends supports such a finding by "clear and convincing evidence." *Id.* § 3142(f)(2). This evidence can take any number of forms, and this heightened burden does not apply to detention on grounds of risk of flight. But where, as here, the government's basis for seeking pretrial detention is a fear that the defendant will endanger the community while awaiting trial, it must prove by clear and convincing evidence that the defendant "presents an identified and articulable threat to an individual or the community." *Salerno*, 481 U.S. at 751.

---

[2] Some circuits (not the Fourth Circuit) have suggested that a defendant's failure to produce any proposal for release or other evidence is enough to permit the presumption to alone to justify a detention order, relieving the government from any further showing of the absence of adequate conditions of release. *See, e.g.*, *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986) (noting in dicta that "[t]he clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness"). But the Act itself, and its legislative history, reveal that in all cases, even where a rebuttable presumption has not been found to be rebutted, the burden remains on the government to prove (by a preponderance of the evidence as to risk of flight, and clear and convincing evidence as to prospective dangerousness, *see infra*) that no arrangement short of detention would reasonably assure appearance and community safety. 18 U.S.C. § 3142(g); S. Rep. 98-225, at 23 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3206 ("Subsection (g) enumerates the factors that are to be considered . . . *whenever* a person is to be released or detained under this chapter") (emphasis added).

It was only in light of this combination of substantive and procedural protections, among others, that the Supreme Court in *Salerno* to upheld the Act's authorization of pretrial detention for prospective dangerousness. The Act may very well have run afoul of due process but for the facts that (1) the Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes," 481 U.S. at 747 (citing 18 U.S.C. § 3142(f)), (2) "[t]he arrestee is entitled to a prompt detention hearing," (3) "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act," *id.* (citing 18 U.S.C. § 3161 *et seq*.), and (4) "the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination," *id.* at 751.

As to the last vital premise—the procedural protections that attach when the government seeks to detain based on prospective dangerousness—the *Salerno* Court explained why those protections were sufficiently robust, if followed, to ensure that only people as to whom the government proves a "likelihood of future dangerousness" would be detained:

> Detainees have a right to counsel at the detention hearing. 18 U.S.C. § 3142(f). They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. *Ibid*. The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. § 3142(g). The Government must prove its case by clear and convincing evidence. § 3142(f). Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision.

*Id.* at 751-52. Absent those protections, the Act's authorization of pretrial detention on dangerousness grounds may very well have been held unconstitutional, even as a facial matter.

8

In this case, as noted above, the government initially moved for detention solely on grounds of prospective dangerousness, ECF No. 16, though at the hearing the government amended its request to seek detention on grounds of flight risk as well. At the hearing, the defense proposed a detailed, robust and restrictive plan for home confinement:

> I am proposing very strict conditions here, to reasonably assure community safety. What I am proposing is release on basically house arrest, location monitoring; this would be essentially 24/7 lockdown in his mother's home. We would be fine with GPS monitoring, through an ankle monitor placed on him, and the leave that would be permitted would only be for the essentials—legal, court obligations, medical—and Mr. Kelley would require pre-approval from his supervising officer before he could leave. On top of that I am proposing that for any leave from the house, he be accompanied by the third-party custodian, his mom . . . . [Mr. Kelley's mother] has no criminal record. She is law-abiding. She's also employed in a trustworthy position, with the [U.S.] Department of Veterans Affairs . . . . She works remotely; she can be in the home with him at all times. Her current husband . . . is retired from a 30-year career with the CIA. These are reliable parental figures for the Court to consider as custodians for release.
>
> I am also proposing that [Mr. Kelley] have no contact with any complainant, that he not discuss the case with any potential witness . . . If the Court wants to impose strict conditions regarding the internet, we are willing to comply with that as well. . . .
>
> I am hopeful that if [the Court] releases him, that he may have the opportunity to re-enroll in college courses in the spring. . . . I think that's actually in everybody's interest. He could do that remotely, and that would be under the supervision of his mom.
>
> I am also proposing that he be permitted to engage in treatment. I would propose, based on the allegations, mental health treatment. I would also propose that he begin sex offense treatment [subject to confidentiality]. I am also proposing that he surrender his passport.

(the "Home Confinement Proposal").

Thus, insofar as the government sought detention on dangerousness grounds, its burden—as required by the Bail Reform Act before the Court could consider detaining Mr. Kelley based on danger—was, and is, to prove, by clear and convincing evidence, that the Home Confinement Proposal would *not* "reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government urged that the question for the Court is whether Mr. Kelley "is a danger to the community." But the question in this circumstance is not whether Mr. Kelley, if released on his own recognizance with no supervision, or with conditions short of the defense's proposal, might pose a risk to others. The defense did not propose such unconditional release. Rather, the question as to the government's request for detention on safety-of-the-community grounds is whether there is clear and convincing evidence that even when confined to his mother's home under 24/7 lockdown, under the third-party custodianship of his mother, required to obtain permission from Pretrial Services for any departure from the home, and when under treatment by mental health professionals, Mr. Kelley would pose an "identified and articulable threat to an individual or the community." *Salerno*, 481 U.S. at 751. *See also, e.g.*, *United States v. Bendann*, Case No. 23-cr-278-JKB, 2023 WL 5806108, at *2-3 (Sept. 7, 2023) (holding that the government had failed to explain, let alone prove by clear and convincing evidence, why the specific release conditions proposed by the defense would not be adequate to alleviate the specific danger to a particular alleged victim the government had contended would be endangered by release).

As discussed at the hearing in this matter, the Court does not (yet) reach the question of whether the government has made such a showing.[3] That is because of the pendency of the

---

[3] Insofar as the Court's preliminary order of detention (ECF No. 18) included a check next to Part I, box 6, or the Court indicated otherwise at the hearing, that order is hereby amended to make clear that Mr. Kelley is being detained pretrial in this case, at this time, solely on grounds

10

active arrest warrant arising from the charges pending against Mr. Kelley in North Carolina. As to the government's motion for detention on non-appearance grounds, as to which its burden is preponderance of the evidence, *see, e.g.*, *Davis*, 449 F. Supp. 3d at 534, the government represented at the hearing that the North Carolina courts, upon Mr. Kelley's appearance there, likely would either enter a detention order, or set bond at an amount so high that such bond order would constitute a *de facto* detention order.[4] Accordingly, the pendency of the active warrant from North Carolina means that any order of this Court setting terms of pretrial home confinement, for example, would effectively be a nullity, or purely hypothetical, and Mr. Kelley would remain detained regardless. The Court accepts the government's position that Mr. Kelley being held in detention in North Carolina creates sufficient risk of nonappearance to justify entry of an order of detention in this case at this time, and that setting conditions of pretrial home confinement would be premature.

## CONCLUSION

At this time, based on the information presented at and prior to the November 16 hearing, the Court understands that even if the Court were to craft a strict and carefully tailored order of pretrial home confinement, the pendency of the North Carolina charges and the nature of North

---

of risk of non-appearance in light of the pendency of the North Carolina case. As stated above, the Court does not at this time reach the question whether the government has proven, by clear and convincing evidence, that detention is justified on grounds of prospective dangerousness.

[4] The use of unaffordable money bail as a proxy or means for pretrial detention, as opposed to operating as a means to ensure appearance, would be impermissible under the Bail Reform Act, 18 U.S.C. § 3142(c)(2) ("The judicial officer may not impose a financial condition that results in the pretrial detention of the person."), and likely would not pass constitutional muster, *Stack v. Boyle*, 342 U.S. 1, 5 (1951) ("Bail set at a figure higher than an amount reasonably calculated to fulfill th[e] purpose [of assuring the presence of the accused for trial] is 'excessive' under the Eighth Amendment."); *Bearden v. Georgia*, 461 U.S. 660, 661, 665, 672-73 (1983) (equal protection and due process likewise forbid "imprisoning a defendant solely because of his lack of financial resources"). But the constitutionality of the North Carolina bail system is not, of course, at issue here.

Carolina pretrial bond procedures would result in Mr. Kelley being detained in North Carolina. Such an outcome would render Mr. Kelley a risk of nonappearance to face the charges in this Court, and further would undermine the very purposes of home confinement, and this Court's ability to craft a meaningful plan for supervised pretrial home confinement. For these reasons, the Court concludes that at this time there is no combination of conditions, short of detention, that will reasonably assure that Mr. Kelley will appear as required.

If those circumstances change, such as lifting of the North Carolina warrant through dismissal of that case or otherwise, then at that time this Court would be squarely presented with the question of whether the government can prove, through facts established by clear and convincing evidence, that there is no combination of conditions—including the stringent terms of home confinement, GPS location monitoring, and a third-party custodian, as proposed by the defense—that would reasonably assure the safety of the community.

An accompanying amended order of detention follows.


Date: November 20, 2023                          _____/s/_____
                                                  Adam B. Abelson
                                                  United States Magistrate Judge